UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

STEPHEN G. ZARICK,                                                                                            Plaintiff,

v.                                                                                      Civil Action No. 3:21-cv-97-DJH

DOCVERIFY, INC. and DARCY MAYER,                                                                Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stephen G. Zarick sued Defendants Darcy Mayer and Darcom Holdings, Inc. (named in the complaint as DocVerify, Inc.) for breach of the implied duty of good faith and fair dealing and (in the alternative) quantum meruit, alleging that he was denied due compensation after finding a buyer for DocVerify.  (Docket No. 1)  The defendants initially moved to transfer the case to the Central District of California; that motion was denied.  (D.N. 19)  They now move to dismiss for failure to state a claim.  (D.N. 20)  The Court heard oral argument on the motion to dismiss at the defendants' request.  (D.N. 27; *see* D.N. 20, PageID.145)  After careful consideration, the Court will deny the motion to dismiss.

**I.**

The following facts are set out in the complaint and accepted as true for purposes of the present motion.  *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  In 2017, Zarick and DocVerify (through Mayer) entered a written contract, "good for one year," under which Zarick would be compensated for his efforts "to help DocVerify . . . find revenue" and "successfully sell the company."  (D.N. 1-2, PageID.12)  The parties continued to operate under the 2017 contract until "well into 2019," with "DocVerify, through Mayer, continu[ing] to seek out, rely on, and benefit from Zarick's services" and "Zarick continu[ing] to devote hundreds of

1

hours and thousands of dollars in out-of-pocket expenses on behalf of DocVerify." (D.N. 1, PageID.4) Zarick alleges that "[o]ne of two situations then developed":

> Either[] (i) the parties entered into a new and binding contract, including an implied covenant of good faith, in late 2019 despite that there is no signed document memorializing that agreement or (ii) the parties did not enter a new enforceable agreement after the 2017 Contract expired, with the result that Defendants are liable to Zarick in quasi-contract and for unjust enrichment.

(*Id.*)

The new contract, which is attached to the complaint and referred to as the 2020 Contract, "provide[d] many of the same terms as the 2017 Contract but increase[d] the commission rate, with the rate increasing as the price for any sale of DocVerify increased." (*Id.*, PageID.5; *see* D.N. 1-3) It stated that "Darcy Mayer, the owner and the seller, would owe Stephen Zarick this compensation upon closing of the sale of the company." (D.N. 1-3, PageID.15) The 2020 Contract was terminable upon thirty days' notice by either party. (*See id.*, PageID.14) Both the 2020 Contract itself and Zarick's communications with Mayer about the contract noted Zarick's success in developing a relationship between DocVerify and Black Knight, a prospective buyer. (*See id.*, PageID.15; D.N. 1, PageID.5) Although Mayer did not deny that fact and stated that he "want[ed] to have a very formal agreement in place to avoid any complications down the road," he did not sign the 2020 Contract. (D.N. 1, PageID.6 (alteration in original); *see id.*, PageID.5)

Meanwhile, "[s]eparate and apart from Zarick's work to position DocVerify to be sold and to find a buyer for it, an entity controlled by Zarick—V.O. Group, LLC—provided services to DocVerify in 2020." (*Id.*, PageID.6) Specifically, "V.O. Group sought to generate leads for DocVerify's services—that is, to drum up potential users of DocVerify's e-notary technology." (*Id.*)

2

On June 29, 2020, Mayer emailed Zarick, stating: "[T]his email is to confirm that, per my earlier emails, you[r] and VO Group's contract with DV [DocVerify] is terminated."[1] (*Id.*, PageID.6 (last alteration in original))  And "just weeks later, Black Knight announced its acquisition of DocVerify in August 2020." (*Id.*) According to Black Knight's SEC filings, it paid a total of $73.5 million for DocVerify and another entity. (*Id.*) Zarick received no commission or compensation from either defendant "for his years of effort in facilitating a sale of DocVerify." (*Id.*, PageID.7) He alleges that the defendants violated the implied covenant of good faith and fair dealing, or in the alternative, that they are liable under the theory of quantum meruit. (*Id.*, PageID.7-8) Defendants move to dismiss both claims.[2] (D.N. 20)

## II.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere

---

[1] Zarick alleges that Mayer's reference to V.O. Group was "an effort to conflate Zarick's and VO Group's services and thus to erase history and avoid paying Zarick for his years of work as a deal with Black Knight loomed." (D.N. 1, PageID.6)  The complaint does not assert any claims on behalf of V.O. Group or arising from V.O. Group's work. (*See* D.N. 21, PageID.159 n.2)

[2] The motion is captioned "Defendants' Partial Motion to Dismiss Plaintiff's Claims"; defense counsel clarified during oral argument that the defendants seek dismissal of the entire action.

possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

## A. Good Faith and Fair Dealing

"Implicit in every contract in Kentucky is the covenant of good faith and fair dealing," and a party's breach of that covenant can serve as "the basis for a viable breach of contract claim." *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F. Supp. 2d 807, 816-17 (E.D. Ky. 2013) (citations omitted). A claim for breach of contract under Kentucky law consists of three elements: (1) "the existence of a contract"; (2) "a breach of that contract"; and (3) "that the breach caused damages."[3] *EQT Prod. Co. v. Big Sandy Co.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007)). The defendants argue that Mayer was not a party to the 2020 Contract and thus cannot be held liable for breaching any covenant implied in that contract. (D.N. 20, PageID.148-49) They further contend that no contract existed between Zarick and Darcom and that even if it did, Darcom was entitled to terminate it. (*Id.*, PageID.149-51) As explained below, both arguments are premature.

### 1. Mayer

The defendants correctly observe that "[a] contract is only binding upon the parties to [the] contract." *Derby City Cap., LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 720 (W.D. Ky. 2013) (first alteration in original) (quoting *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007)). Here, however, the 2020 Contract does not list or otherwise identify the parties to the agreement, so it is unclear whether Darcom or Mayer

---

[3] The parties appear to agree that Kentucky law applies. (*See* D.N. 20, PageID.148-49 (citing and relying on Kentucky law as to both claims); D.N. 21, PageID.157-60 (same))

4

(or both, or neither) was meant to be bound. (*See* D.N. 1-3) And contrary to the defendants' argument that the complaint lacks "factual allegation[s] that Mr. Mayer, individually and on his own behalf, was ever a party to any contract or agreement at issue in this case" (D.N. 20, PageID.148), Zarick expressly alleges that "[t]he 2020 Contract is a binding and legally enforceable contract between Zarick, DocVerify, and Mayer" (D.N. 1, PageID.7) and that the 2020 Contract obligated Mayer to compensate Zarick if DocVerify were sold. (*Id.*, PageID.5; *see* D.N. 1-3, PageID.15 (providing that "Darcy Mayer, the owner and the seller, would owe Stephen Zarick [the agreed-upon] compensation upon closing of the sale of the company")) For the same reasons, the defendants' observation in passing that "Kentucky law insulates agents from liability for acts done within the scope of [their] agency on behalf of a disclosed principal" (D.N. 20, PageID.149 (alteration in original) (quoting *Sudamax*, 516 F. Supp. 2d at 845)) is irrelevant at this stage of the proceedings—it is not yet established whether Mayer, if he entered the 2020 Contract, did so on his own behalf or Darcom's. Zarick alleges the former, and the 2020 Contract, which is attached as an exhibit to the complaint, supports his allegations at least to some degree. (*See* D.N. 1-3) In sum, dismissal of the contract claim against Mayer is inappropriate at this stage of the litigation.

  **2.** **Darcom**

The defendants assert that because Mayer never signed the 2020 Contract, no contract existed between Zarick and Darcom. (D.N. 20, PageID.149-50) As explained above, however, Zarick alleges that the parties were operating under "a new and binding contract . . . despite that there is no signed document memorializing that agreement" (D.N. 1, PageID.4), and he pleads other facts to support that allegation. (*See, e.g.*, *id.*, PageID.4-6) Thus, the mere fact that the 2020 Contract is unsigned does not defeat his claim at the pleading stage.

Next, the defendants argue that even if there was a contract between Zarick and Darcom, Darcom was entitled to terminate the contract upon thirty days' notice, which allegedly occurred on June 29, 2020. (D.N. 20, PageID.150) Zarick was to be paid "*only* upon the sale of Darcom" (*id.*), Defendants contend, and "this contingency never occurred during the life of the purported contract." (*Id.*) The defendants also quote several cases for the proposition that a party does not violate the covenant of good faith and fair dealing by acting in accordance with the express terms of the contract—here, by terminating it. (*Id.* ("Even under the terms of the unexecuted 2020 contract as pled by Plaintiff, Darcom had the right to terminate the contract and it exercised that right.")) Zarick counters with numerous citations of his own showing that "where a party has discretion—such as to terminate a contract—it cannot exercise that discretion to frustrate the purposes of the contract," particularly in the context of sales commissions. (D.N. 21, PageID.158; *see id.*, PageID.159 & n.1) The defendants do not address this argument in their reply. (*See generally* D.N. 22)

Defendants are correct that "[i]t is not 'inequitable' or a breach of good faith and fair dealing in a commercial setting for one party to act according to the express terms of a contract for which it bargained." *Hunt Enters., Inc. v. John Deere Indus. Equip. Co.*, 18 F. Supp. 2d 697, 700 (W.D. Ky. 1997) (quoting *Travelers Ins. Co. v. Corporex Props., Inc.*, 798 F. Supp. 423, 425 (E.D. Ky. 1992)). But "discretion to terminate the contract is not unbridled"; rather, it "is circumscribed by the implied covenant of good faith and fair dealing." *Clubspecialists Int'l LLC v. Keeneland Ass'n Inc.*, No. 5:16-CV-345-KKC, 2017 U.S. Dist. LEXIS 17523, at *12 (E.D. Ky. Feb. 8, 2017) (citing, *inter alia*, *Time Warner Cable Midwest LLC v. Pennyrile Rural Electric Coop. Corp.*, No. 5:15-CV-TBR, 2015 U.S. Dist. LEXIS 94372, at *12 (W.D. Ky. July 21, 2015)). Like the plaintiff in *Clubspecialists*, Zarick "has offered facts to support [his] claim of a breach of the implied

6

covenant of good faith and fair dealing," *id.* at *13: he alleges that he introduced the defendants to Black Knight and facilitated a sale in accordance with the parties' contract, but Darcom/Mayer terminated the contract shortly before the sale was consummated. (*See* D.N. 1) Zarick thus plausibly alleges that the defendants terminated the contract to avoid paying him the commissions he was owed, and dismissal of his contract claim is not warranted. *See Clubspecialists*, 2017 U.S. Dist. LEXIS 17523, at *13-*14 (denying judgment on the pleadings).

**B.     Quantum Meruit[4]**

A claim of quantum meruit consists of the following elements:

1. that valuable services were rendered, or materials furnished;

2. to the person from whom recovery is sought;

3. which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person; and

4. under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person.

*Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n*, 242 S.W.3d 359, 366 (Ky. Ct. App. 2007) (citing 66 Am. Jur. 2d Restitution and Implied Contracts § 38 (2001)).

---

[4] Although Zarick may not recover for both breach of contract and quantum meruit, it is well established that he may plead those two causes of action in the alternative, as he expressly does here (D.N. 1, PageID.7). *See* Fed. R. Civ. P. 8(d)(2); *Son v. Coal Equity, Inc.*, 122 F. App'x 797, 802 (6th Cir. 2004). The defendants acknowledge this rule but casually accuse Zarick's counsel of violating Rule 11 by alleging that the 2020 Contract was valid "[d]espite [admitting] that Mr. Mayer expressly refused to sign" it. (D.N. 20, PageID.147 n.2; *see also* D.N. 122, PageID.166 (citing Rule 11, then asserting that "Plaintiff, through his attorneys, plays fast and loose with the Rules" and that "[s]uch tactics should not be permitted")) As discussed above, Zarick plausibly alleges that the parties were operating in accordance with the unsigned 2020 Contract. *See supra* part II.A. Thus, the complaint does not appear to violate Rule 11, even if a violation were properly asserted. *See* Fed. R. Civ. P. 11(c)(2) (requiring a separate motion, served in accordance with Rule 5, to seek sanctions for claimed violations of Rule 11(b)).

Defendants argue that Zarick "alleges he performed services for Darcom, not Mr. Mayer," and that he fails to allege that Mayer received any services for which he knew Zarick expected payment. (D.N. 20, PageID.149) They also (again) cite Kentucky law that "an agent is protected from liability for lawful acts done within the scope of his agency on behalf of a disclosed principal," noting that Zarick "alleges the work he performed was on behalf of Darcom, not Mr. Mayer." (D.N. 22, PageID.165 (citing D.N. 1 ¶¶ 14, 18, 29, & 30)) Zarick expressly alleges, however, that "[a]t Defendants' request, [he] invested substantial amounts of time, effort, expertise, and out-of-pocket expenditure and conferred a direct benefit on Defendants, which they accepted." (D.N. 1, PageID.8) And as noted above, the lack of a signed contract—as well as the terms of the unsigned contract—leaves open the question of which defendant Zarick was dealing with.

As to Darcom, the defendants offer several arguments and case citations that are largely irrelevant and somewhat misleading. They first correctly note that "under Kentucky law, not all efforts that benefit another party are entitled to be compensated" (D.N. 20, PageID.151 (citing *MidAm. Distrib., Inc. v. Clarification Tech., Inc.*, 807 F. Supp. 2d 646, 681 (E.D. Ky. 2011))); specifically, Kentucky courts have recognized that "[t]here are some professions, such as insurance, real estate and sales, wherein quantum meruit has little applicability." (*Id.* (quoting *Bishop v. Am. States Life Ins. Co.*, 635 S.W.2d 313, 315 (Ky. 1982))) As Zarick points out, however, the cases cited by Defendants contemplate situations where no sale occurred. (D.N. 21, PageID.160) For example, the *Bishop* court continued:

> The realtor may spend untold hours in trying to locate a house for a prospective buyer or show one particular house to many different people, but until a sale is consummated, the realtor is entitled to no compensation.

> The same concept applies to an insurance agent who may spend fruitless time in persuading a potential client to purchase an insurance policy. No policy sold equals no commission paid.

635 S.W.2d at 315. Here, in contrast, Zarick alleges that the sale he facilitated was consummated, but he was cut out of the deal. (*See generally* D.N. 1)

Defendants' citation to *Quadrille Business Systems* is likewise inapposite. (D.N. 20, PageID.152-53) In that case—which was decided at the summary-judgment stage—the Kentucky Court of Appeals quoted with approval the following rule:

> Where no compensation is agreed upon in advance for services requested by and performed for another, the presumption that compensation was intended is rebutted by circumstances which negative such an intention, and one of such circumstances is a strong self-interest in the outcome of the transaction by the person furnishing the services. Thus, the expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim; a company cannot recover for the alleged services it renders in submitting a program to a second company where it is conclusively established as a matter of law that the alleged services were preliminary services performed without any thought of direct cash compensation but with a view to obtaining business through a hoped-for contract.
>
> The inference of a promise to pay for services is also negatived where the circumstances or conduct warrant a contrary inference or the person benefited has said or done nothing from which such a promise may be inferred, or where, at the time the services were rendered, it was intended, understood, or agreed that no payment should be made for them, or where the services were performed without authority, express or inferred.

*Quadrille Bus. Sys.*, 242 S.W.3d at 366-67 (quoting 66 Am. Jur. 2d Restitution and Implied Contracts § 47 (2001)). Defendants do not attempt to explain how this discussion supports their motion to dismiss (*see* D.N. 20, PageID.152-53; D.N. 22, PageID.164-65), and in fact, it appears to support Zarick's position more than their own: the "circumstances or conduct" alleged in the complaint clearly show that Zarick performed the alleged services with the expectation that he would be compensated if a sale occurred and that Mayer and Darcom understood that expectation. (*See, e.g.*, D.N. 1, PageID.5-6 (describing March 2020 contract negotiations between Zarick and

9

Mayer and quoting Mayer as stating that he "want[ed] to have a very formal agreement in place to avoid any complications down the road" (alteration in original))

Finally, Defendants argue that the complaint is "vague" or "nebulous" as to what services Zarick performed. (D.N. 20, PageID.152-53; D.N. 22, PageID.164-65) But they cite no authority imposing a heightened pleading standard, and the complaint generally describes Zarick's actions—e.g., "attempting to find a buyer for DocVerify," "identif[ying] and introduc[ing]" potential buyers to DocVerify (D.N. 1, PageID.1), and "making DocVerify an attractive acquisition target and . . . finding potential suitors." (*Id.*, PageID.4) There is no contention that the actions alleged do not constitute "valuable services." *Quadrille Bus. Sys.*, 242 S.W.3d at 366. The motion to dismiss will therefore also be denied as to the claim of quantum meruit.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Defendants' motion to dismiss (D.N. 20) is **DENIED**.

(2) Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate Judge Colin H. Lindsay for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive matters, including discovery issues. Judge Lindsay is further authorized to conduct a settlement conference in this matter at any time.

March 10, 2023

David J. Hale, Judge
United States District Court